[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff brings this action in four counts seeking the return of his power boat, damages for the wrongful detention of same, punitive damages, attorney fees and costs. Essentially, plaintiff claims that defendant's agents and employees, without permission, removed his 1985 Searay power boat from its dockside moorings in front of his lake front home and thereafter illegally retained possession of same.
The boat was not returned to plaintiff until he placed a sum of money in escrow as required by defendant.
In a three count counterclaim, defendant seeks damages to compensate it for winterizing, repairing and storing plaintiff's boat. Defendant contends that after removing the boat from defendant's custody without paying for certain parts and authorized repairs plaintiff or his agent called defendant's marina claiming continued problems with the boat's operation and requiring that further repairs be made. In accord with plaintiff's request, defendant's employees removed the boat from plaintiff's dock and brought it back to the marina where the necessary repair or replacement was made. Thereafter, the boat was removed from the lake and locked in a compound to be held as security for payment by plaintiff of all outstanding charges.
At time of trial, the court heard two witnesses, namely, Robert Wagner, the plaintiff, and Gerard Strol, defendant's service manager.
After a careful consideration of all of the credible evidence produced at trial, the court finds the following facts: During the first week of September, 1987, plaintiff delivered his 23 foot power boat to defendant for winterization, storage and repairs to or replacement of an automatic bilge pump switch. On or about February 10, 1988, plaintiff paid defendant for the winterization of his boat including the agreed upon storage charges. He also renewed CT Page 611 his request regarding the defective switch. Thereafter, as initially directed, plaintiff called defendant during the first week of April, 1988 to learn of the approximate date on which he would be able to take possession of his boat. This and subsequent calls were met with excuses as to why the boat was not ready. About the middle of June, plaintiff went to the marina to check on his boat and found it moored in the lake with its engine compartment full of water, evidencing that the automatic bilge pump switch switch still was not repaired. When plaintiff called defendant's marina to complain, he was told, for the first time, that his boat would not move forward under its own power. Consequently, he demanded that it be restored to proper working order. He had driven the boat to the marina in excellent working order with the exception of the pump switch and he wanted it returned to him in the same condition. During the third week of June, he was informed that the boat was ready. He went to the marina to take possession of his boat and was presented with a service order itemizing parts and repair charges totaling $1,149.50. Defendant includes in the $1,149.50 invoice the cost of parts used and labor charges incurred in repairing the lower unit of the outboard component of plaintiff's inboard-outboard Mercruser engine. These repairs, however, were never authorized by plaintiff and should not have been necessary since the boat was capable of moving forward and rearward under its own power when delivered to defendant for storage and it should have been returned to the plaintiff in the same condition. However, defendant does have other charges in the invoice for which it should be compensated. These charges were incurred for parts used and labor expended in summerizing or preparing the boat for summer use. As indicated, plaintiff was presented with the invoice but refused to pay it, although he did indicate to the counter person at the marina office that he would be willing to discuss it with someone of authority. Finding no one available, after waiting a short period of time, plaintiff took possession of his boat, without being challenged, and drove it to his lake side home where he moored it to his dock.
Thereafter, during the last few days of June or the first several days of July, 1988, Gerard Strol and two other of defendant's employees proceeded to plaintiff's dock and removed his boat, bringing it back to the marina where it was taken out of the water and locked in a compound until the end of July, 1988 when it was returned after plaintiff escrowed $1,150.00.
While defendant asserts a possessory lien for the amount claimed, clearly, it lost its possessory lien under CT Page 612 section 49-55 of the General Statutes when unchallenged and without force or threat plaintiff was allowed to remove his boat from defendant's moorings. Further, defendant could not and did not regain any possessory rights by removing the boat from plaintiff's dock without authority and thereafter impounding it.
The actions of defendant's employees and agents deprived plaintiff of the use of his pleasure craft for the month of July, 1988, and the court finds the reasonable value of the loss of use of that boat for the month to be $1,800.00.
In accord with the foregoing, judgment may enter for the plaintiff on the second count of his amended complaint as follows:
 Damages for the loss of use of boat for month of July, 1988, $1,800.00 together with costs of suit 177.00 --------- Total due the plaintiff $1,977.00
The court finds for the defendant on the remaining counts of plaintiff's amended complaint and therefore makes no other award of damages or attorney's fees to the plaintiff.
Judgment may enter in favor of the defendant on the second count of its counterclaim as follows:
Parts:
 In line fuse $ 7.90 Oil filter 7.95 Oil 14.75 Spark plugs 28.00 Fuel Filter 8.95 Distributor cap 24.50 Rotor 8.75 Lubrication 4.50 ------- $105.30
Labor:
 Engine tune-up $135.00 Change fluids and lubricant 36.00 ------- CT Page 613 $171.00 Gas 50.00 -------
Total damages to defendant $326.30
The court finds for the plaintiff on the remaining counts of defendant's counterclaim.
WEST, JUDGE